In the Matter of the Claim of MINNIE INGALLS, Respondent, against D. D. HERRICK and Another, Appellants. STATE INDUSTRIAL BOARD, Respondent.

Third Department, October 2, 1936.

*Ainsworth & Sullivan* [*John J. Conners, Jr.,* of counsel], for the appellants.

*John J. Bennett, Jr., Attorney-General* [*Roy Wiedersum, Assistant Attorney-General,* of counsel], for the State Industrial Board, respondent.

Per Curiam. Award in a death claim to a widow and three children. The decedent was employed in a coal yard, loading and delivering coal. On November 27, 1933, he assisted a coemployee in moving a coal loader weighing a ton and a half from one bin to another, a distance of about fifteen feet. This required about five minutes of effort, and necessitated lifting one end of the heavy machine and pushing and pulling it into place. As this work was completed, the deceased straightened up with a distorted countenance and a look of pain on his face, and he put his hands to his breast, holding that position about three minutes, and then said to his fellow workman, " that is the last time I will lift that loader." Within a half hour later, while he was in a cellar shoveling back coal that he was helping to deliver, he fell to the floor and died. While the happening of an accident is not questioned by the appellant, it is contended that the death was due to a pre-existing heart disease, and not to the accident. It is also contended that no written notice of injury was given to the employer, and that there were no grounds for excusing notice; that evidence was improperly excluded, and that the compensation rate is erroneous. There was evidence in the record to justify a finding of causal relation. It appears from the evidence that the employer was notified at once of the death and its circumstances, and that he communicated that fact to the widow; and that the attorney for the employer and carrier, on the day of the funeral, made an investigation, and took a statement in writing from the employee who was working on the day of the accident with the deceased, the only one to whom the facts were known, and interrogated the witness thereupon, without putting it in evidence. The failure to give written notice was properly excused.

The carrier was not permitted to cross-examine the claimant's doctor on the condition of decedent's heart prior to the accident. This was clear error. The doctor had examined the deceased professionally three or four days before death, knew the condition of his heart, and so testified. It was the failure of decedent's heart that was under investigation, and claimant urged an accidental injury to the heart as the basis of the claim. This gave the carrier the right to pursue that question as far as material, and through any medical witness who knew the fact and was competent to testify thereon. (Steinberg v. New York Life Ins. Co., 263 N. Y. 45.) Not only was the referee clearly wrong in his ruling on the question, but his attitude may not be commended. He permitted the doctor to determine for himself whether he would answer proper questions. It is not for witnesses, whether medical or lay, to determine what evidence they will give, nor for referees to be guided by medical experts on the admissibility of proof. The parties are entitled to

rulings by referees on disputed questions of evidence, to the end that this court will be able to determine what course the hearing has taken, whether all competent proof has been received and considered, that the statute has been reasonably followed, and a fair trial had. While we do not condone the course pursued by the referee in not allowing a full examination of the doctor, no evidence was offered to show that the accident did not cause or contribute to the death. From a perusal of the whole record it is evident that the most favorable proof that claimant expected to make was that the decedent was suffering from an advanced condition of heart disease, that the doctor had warned and advised the decedent against working. But he did go to work, and was working when he died. In the circumstances, a pre-existing heart disease would not relieve the employer and carrier, as the evidence indicates causal relation between the accidental injury and the death. Accordingly we hold that the error, in this case, does not require a reversal of the award.

The average weekly wage found by the Board was incorrect, and the compensation awarded was inexact. The proof shows the deceased to have been a full-time six-day worker. During the preceding year he had earned $1,227.50. By applying the formula prescribed by subdivision 1 of section 14 of the Workmen's Compensation Law, his average weekly wage was twenty-two dollars and seventy cents instead of twenty-three dollars and sixty-one cents, as found. The award to the widow and children under subdivision 2 of section 16 should have been six dollars and eighty cents per week instead of seven dollars and eighty cents per week, and to each of the children two dollars and twenty-seven cents per week instead of two dollars and thirty-six cents.

The award is modified accordingly, and as so modified, affirmed.

RHODES, McNAMEE and CRAPSER, JJ., concur; HILL, P. J., dissents, with a memorandum, in which HEFFERNAN, J., concurs.

HILL, P. J. (dissenting). I vote to affirm the award as made by the Industrial Board. I recognize that the computation adopted by the majority is in conformity with subdivisions 1 and 2 of section 14 of the Workmen's Compensation Law. However, it is unquestioned that the decedent earned $1,227.50 in the year immediately preceding his death. This would give an actual average weekly wage of twenty-three dollars and sixty-one cents, as fixed in the decision of the Board. Therefore, I believe that subdivision 3 of the above-mentioned section should be applied for the reason that subdivision 1 " cannot reasonably and fairly be applied."

HEFFERNAN, J., concurs.

Award modified in accordance with opinion, and as so modified affirmed, with costs to the State Industrial Board.